UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
NILUFAR KURBANOVA,

              Plaintiff,

           - against -

UNITED STATES OF AMERICA,

              Defendant.
----------------------------------------------------------------x

**MEMORANDUM & ORDER**

10 CV 1328 (RJD) (CAP)

DEARIE, District Judge.

In July 2009, plaintiff Nilufar Kurbanova filed a claim for medical malpractice in New York Supreme Court, Kings County, against defendant Dr. Irina Karban. In March 2010, the United States of America removed the action pursuant to the Federal Tort Claims Act ("FTCA") and moved to dismiss the complaint with prejudice on the ground that plaintiff has not exhausted her administrative remedies, as required by statute, and that she can no longer do so within the time allowed.

Following a prolonged, unannounced absence from the country and repeated, specific directives from the Court to respond to defendant's motion or otherwise to prosecute her case, by submissions dated July 25, 2011, plaintiff asks the Court both to furnish her with counsel and to grant her more time to investigate her claim. These requests are denied and plaintiff's complaint is dismissed for the failure to exhaust her administrative remedies. Because her complaint would have been timely under state law, however, plaintiff may proceed with her federal case if she complies with the instructions appearing in the final paragraph of this Memorandum and Order.

**I.    Background**

In ruling on defendant's motion, the Court accepts the complaint's sparse allegations as true. Plaintiff alleges that Irina Karban, M.D., "undertook and agreed to render medical care to"

plaintiff "beginning on or about February 6, 2007," but "was negligent, careless and reckless with regard to the care." (Compl., dkt. #1, at 6.) Plaintiff alleges also that Dr. Karban "failed to inform the plaintiff as to the exact nature and extent of plaintiff's condition and failed to inform the plaintiff as to the risks, complications, consequences and dangers of the care." (Id. at 8.) Plaintiff submits that, "[a]s a result," she "was injured." (Id. at 7.)

On March 24, 2010, the United States – contending that plaintiff's claim falls under the FTCA and that it alone is the proper defendant to the action – removed the action to federal court pursuant to 28 U.SC. § 2679(d)(2) and 42 U.S.C. § 233(c). (See Notice of Removal, dkt. #1, at 1-2.) On July 13, 2010, defendant served a copy of its motion to dismiss on plaintiff. (Dkt. #5.) Defendant certifies that, as of March 2010, a search of the Claims Office database "found no record of an administrative tort claim filed by Plaintiff . . . relating to Dr. Irina Karban." (Dkt. #24-2, at 1.) Thus, defendant argues that plaintiff's complaint should be dismissed with prejudice for a failure to exhaust her administrative remedies within the two years after her claim accrued, as required by 28 U.S.C. § 2401(b).

Despite the fact that her complaint was filed by counsel, plaintiff proceeds pro se. In a letter dated August 12, 2010, attorney Aleksander Vakarev notified the Court that his "office does not represent plaintiff in this matter," that he "filed a summons and complaint to merely preserve her claim" and that he advised her "to seek other counsel." (Dkt. #6.) At a status conference held on September 20, 2011, the Court (via Magistrate Judge Pollak) directed Mr. Vakarev to move to withdraw as counsel in the action. At the same conference, plaintiff's husband informed the Court that plaintiff was in Uzbekistan and would remain there until December. (Dkt. #8.) Months passed. On January 13, 2011, the Court ordered plaintiff to apprise the Court and Mr. Vakarev of her whereabouts within two weeks. Judge Pollak notified

2

plaintiff that failure to respond would result in the "recommend[ation] that plaintiff's case be dismissed for a failure to prosecute." (Dkt. #11.)

By Order dated March 28, 2011, in the absence of any communication by or on behalf of plaintiff, Judge Pollak granted Mr. Vakarev's motion to withdraw.[1] Judge Pollak added that if she did "not hear from plaintiff during the first week in April," then she would "recommend dismissal of plaintiff's case." (Dkt. #19, at 3.) On the afternoon of April 8, 2011, the last day on which to respond, plaintiff's husband called the Court to inquire whether the case could continue. One week later, on April 15, 2011, plaintiff submitted a handwritten letter informing the Court that she was back from Uzbekistan and that she wanted to proceed. (Dkt. #20.)

Proceed plaintiff did, but only in the loosest sense of the term. At a conference held on June 24, 2011, at which plaintiff appeared pro se along with her husband and a Court-furnished translator, the defendant was ordered to serve another copy of its motion papers – initially delivered one year earlier – on plaintiff and her husband. Defendant reiterated its view that plaintiff's claim is barred for her failure to exhaust administrative remedies in a timely fashion. At the conference, as memorialized in an Order dated July, 28, 2011, the Court directed plaintiff to respond with "all facts and allegations pertaining to her claim," including "all relevant dates upon which plaintiff is alleging malpractice and injury." (7/28/10 Order, dkt. #27, at 1.)

On July 25, 2011, plaintiff submitted an affirmation in opposition to the motion to dismiss. In the affirmation, which is difficult to construe, plaintiff states that Dr. Karban "admitted negligence." (Pl. Aff., dkt. #28, at 1.) Providing no dates, plaintiff alleges that she arrived at the hospital with "bleeding and [a] big pain in my womb" but that "Doctor Karban sent me home, because I didn't have insurance coverage." (Id. at 2.) Plaintiff alleges that she "stayed

---

[1] On February 18, 2011, plaintiff's husband had accepted service of Mr. Vakarev's motion papers by certified mail with return receipt requested. (Dkt. #17.)

at home" and called Dr. Karban a "few time[s]" requesting advice, to which "she answered, just wait." (Id.) Plaintiff adds that Dr. Karban "knew what happened with me because she did [a] test and damage[d] my placenta." (Id. at 1.) After Staten Island University hospital doctors "rescued" plaintiff, her baby "was born in 25 weeks," but "[a]fter 4 month[s] he died." (Id. at 2.)

Plaintiff concludes that Dr. Karban "gave me hard time and suffering." (Id.) Thus, she wants to "investigate that case and punish Doctor Karban." (Id.) To help her accomplish this goal, plaintiff requests that the Court appoint her counsel. (Dkt. #29.) Plaintiff also requests "more time to proceed [with] my case against defendants." (Dkt. #30.)

## II. Discussion

Given the complaint's denuded allegations and counsel's insistence that he never represented plaintiff, the Court evaluates all of plaintiff's submissions under the standards applicable to pro se pleadings. "A pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (internal quotation marks omitted); see also Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009). As a result, "'pro se submissions must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" United States v. Akinrosotu, 637 F.3d 165, 167 (2d Cir. 2011) (quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994)).

The relaxed standard of review does not eliminate a pro se plaintiff's burden of pleading the necessary jurisdictional facts. "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." Makarova v. United States, 201 F.3d 110, 113 (2000) (affirming dismissal of FTCA claim pursuant to Rule 12(b)(1) because "the district court lack[ed] the statutory or constitutional power to adjudicate it"). Furthermore, although a "court must take all facts alleged in the complaint as true and draw all reasonable

4

inferences in favor of plaintiff," Nat'l Res. Def. Council v. Johnson, 461 F.3d 164, 171 (2d Cir. 2006) (internal quotation marks omitted), "'jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it,'" APWU v. Potter, 343 F.3d 619, 623 (2d Cir. 2003) (quoting Shipping Fin. Servs. Corp. v. Drakos, 140 F.3d 129, 131 (2d Cir. 1998)).

A. Plaintiff's Claim is Against the United States

Notwithstanding that Dr. Karban allegedly treated plaintiff, the United States is the lone defendant against which plaintiff may assert her claim. "The FTCA waives the government's sovereign immunity [with respect to] 'claims against the United States, for money damages [on account of] personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment.'" Makarova, 201 F.3d at 113 (quoting 28 U.S.C. § 1346(b)). Plaintiff's claim fits within this definition.

Where a plaintiff files a state complaint for medical malpractice against a federal employee acting within the scope of employment, a pair of overlapping provisions authorizes the United States, upon the Attorney General's certification, to remove the action to federal court "at any time before trial" and to substitute itself as the defendant. See 28 U.S.C. § 2679(d)(2); 42 U.S.C. § 233(c). "[O]nce certification and removal are effected, exclusive competence to adjudicate the case resides in the federal court." Osborn v. Haley, 549 U.S. 225, 243 (2007). In such cases, an action against the United States is the only remedy, and "[a]ny other civil action or proceeding for money damages arising out of or relating to the same subject matter against the employee . . . is precluded." 28 U.S.C. § 2679(b)(1); see 42 U.S.C. § 233(a) (preempting claims "for damage for personal injury, including death, resulting from the performance of medical,

5

surgical, dental, or related functions . . . by any commissioned officer or employee of the Public Health Service while acting within the scope of his office or employment").

The FTCA's regime of removal, substitution and preemption extends to malpractice claims against private medical practitioners whom the United States "deems" by statute to be federal employees. "Under Section 330 of the Public Health Service Act, the federal government provides support for community health centers in medically underserved communities." A.Q.C. ex rel. Castillo v. United States, 715 F. Supp. 2d 452, 456 (S.D.N.Y. 2010) (citing 42 U.S.C. § 254(b)), aff'd, — F.3d —, 2011 WL 3926557 (2d Cir. Sept. 8, 2011). "As part of this support, Congress extended medical malpractice coverage to these entities under the [FTCA], which allows the United States to 'deem' health centers receiving federal funds under Section 330 and their employees to be 'employees' of the federal government and therefore covered for medical malpractice purposes by the FTCA." Id. (citing 42 U.S.C. §§ 233(g)-(n)).

Defendant asserts that, at all relevant times, Dr. Karban worked at the Shore Road Family Health Center. Effective January 1, 2007, the United States deems the Center's practitioners to be Public Health Service Employees and, thus, eligible for FTCA malpractice coverage. (See Decl., dkt. #24-2, at 2.) Defendant certifies that Dr. Karban "was acting within the course and scope of her employment, as a deemed employee of the United States for purposes of the [FTCA] at the time of [the] incident" alleged in the complaint. (Cert., dkt. #1.) Plaintiff "bear[s] the burden of showing that the certification was improper." Lipkin v. SEC, 468 F. Supp. 2d 614, 623 (S.D.N.Y. 2006). Plaintiff does not attempt to carry this burden. Absent evidence to the contrary, the provision of negligent medical care, or the refusal to provide required care in a manner reasonable under the circumstances, falls plainly within the scope of a physician's professional duties. See Rivera v. United States, 928 F.2d 592, 608 (2d Cir. 1991)

("The question of whether the act was wrongful is a different one from whether the act occurred while the employee was acting within the scope of his employment."); see also Osborn, 549 U.S. at 247 (holding certifications to be proper even "when a federal officer charged with misconduct asserts, and the Government determines, that the incident or episode in suit never occurred"). Because the United States is the exclusive defendant to the action, plaintiff may "punish" Dr. Karban only by pressing her claim against the government as a whole.

B. Plaintiff Has Not Yet Established Subject Matter Jurisdiction

"The FTCA bars claimants from bringing suit in federal court until they have exhausted their administrative remedies." McNeil v. United States, 508 U.S. 106, 113 (1993). Before commencing a personal injury lawsuit against the United States, a plaintiff must "first present[] the claim to the appropriate Federal agency" by submitting a notice of claim. 28 U.S.C. § 2675(a). Additionally, there is a limitations period: the notice must be "presented in writing . . . two years after [the] claim accrues," and any lawsuit must be commenced "within six months after . . . notice of final denial of the claim." Id. § 2401(b). The order in which these events must occur – notice, denial and filing – is an "unambiguous" and "straightforward statutory command." McNeil, 508 U.S. at 112.

Given plaintiff's failure to exhaust her administrative remedies, the Court indeed lacks jurisdiction to hear this case at present. "When an action is brought against the United States government, compliance with the conditions under which the government has agreed to waive sovereign immunity is necessary for subject matter jurisdiction to exist." Williams v. United States, 947 F.2d 37, 39 (2d Cir. 1991). As such, the FTCA's "requirement that a notice of claim be filed is jurisdictional and cannot be waived." Keene Corp. v. United States, 700 F.2d 836, 841 (2d Cir. 1983).

7

Plaintiff's present failure to exhaust, however, does not end the analysis. Defendant's brief omits any reference to the authority informing the precise issue here: namely, under what circumstances a medical malpractice claim filed in state court against a "deemed" federal employee will be barred for the plaintiff's failure to exhaust administrative remedies. See A.Q.C., 2011 WL 3926557; Valdex ex rel. Donely v. United States, 518 F.3d 173 (2d Cir. 2008); Celestine v. Mt. Vernon Neighborhood Health Ctr., 403 F.3d 76 (2d Cir. 2005); see also Santos ex rel. Beato v. United States, 559 F.3d 189 (3d Cir. 2009) (applying Valdez); J.D. ex rel. Doe v. United States, 2011 WL 292010 (S.D.N.Y. 2011); Dominguez ex rel. Dominguez v. Verna, 2010 WL 4942225 (S.D.N.Y. 2010). As discussed below, Congress has enacted an exception to timely exhaustion that applies to certain complaints filed in state court. See 28 U.S.C. § 2679(d)(5). And, importantly for present purposes, a plaintiff may be entitled to "equitable tolling of the limitations period set out in 28 U.S.C. § 2401(b)." A.Q.C., 2011 WL 3926557, at *7 n.6 (reserving decision on whether the two-year period in § 2401(b) for filing a notice of claim, apart from the notice requirement itself, is jurisdictional).

1. The statutory exemption to timely exhaustion

"Although timely administrative exhaustion is a necessary prerequisite to the pursuit of a malpractice claim against the United States, the law affords some flexibility when a plaintiff who overlooks this requirement files a complaint within the prescribed time for administrative review." Valdez, 518 F.3d at 176. "In 1988, Congress passed the Federal Employees Liability Reform and Tort Compensation Act (the 'Westfall Act'), which expressly provide[s] that while the administrative-exhaustion requirement would apply to all actions, even those removed from state court, plaintiffs would be given an opportunity, after the removal, to exhaust those remedies." Celestine, 403 F.3d at 83 (citation omitted). The Westfall Act partially remedies the

perceived "injustice" of requiring a plaintiff, lacking "reason to know that his state court suit, in fact, lies only against the United States and can, therefore, be removed to federal court," to comply with an exhaustion requirement of which the plaintiff almost assuredly is unaware. Id. at 82-83 (discussing Kelley v. United States, 568 F.2d 259 (2d Cir. 1978), which carved out a judicial exception to exhaustion for such FTCA claims brought initially in state court).

Under the Westfall Act, an FTCA complaint filed before the plaintiff exhausts her administrative remedies still must be dismissed. But if the case is – like this case – one "in which the United States [was] substituted as the party defendant," then the plaintiff may submit a notice of claim "to the appropriate Federal agency within 60 days after dismissal," as long as the notice "would have been timely had it been filed on the date the civil action was commenced." 28 U.S.C. § 2679(d)(5). Accordingly, a state tort claim against a "deemed" federal employee that is transformed into an FTCA claim against the United States is not "forever barred" for the plaintiff's prior failure to file a timely notice of claim, if the state complaint was filed "within two years after [the] claim accrue[d]." 28 U.S.C. § 2401(b).

    2.    The "threshold" claim accrual inquiry

"State law applies to an FTCA claim." Bernard v. United States, 25 F.3d 98, 102 (2d Cir. 1994). "The Government's liability under the FTCA is limited to 'circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.'" Id. (quoting 28 U.S.C. § 1346(b)). Under New York law, an infant born alive possesses "a cause of action for medical malpractice premised on faulty prenatal care." LaBello v. Albany Med. Ctr. Hosp., 85 N.Y.2d 701, 704 (1995). Likewise, a "pregnant mother who suffer[s] an independent injury as a result of malpractice

9

[may] bring suit for her own personal injuries."[2]  Sheppard-Mobley ex rel. Mobley v. King, 4 N.Y.3d 627, 636 (2005).

Nevertheless, "[f]ederal law determines the date that an FTCA claim accrues." A.Q.C., 2011 WL 3926557, at *3.  Thus, "identifying the proper accrual date for plaintiffs' federal claim" is "a threshold concern." Valdez, 518 F.3d at 176; cf. Grancio v. DeVecchio, 572 F. Supp. 2d 299, 308 (E.D.N.Y. 2008) (noting that accrual under the FTCA "is often described as a question of fact," which "must be resolved by the district court").  For FTCA claims, courts have long endorsed a "diligence-discovery" accrual rule.  See, e.g., United States v. Kubrick, 444 U.S. 111, 118-22 (1979) (holding that the period in § 2401(b) commences when a plaintiff is "aware of his injury and its probable cause," despite the "plaintiff's ignorance of his legal rights"); Barrett v. United States, 689 F. 2d 324, 327 (2d Cir. 1982).  A claim for medical malpractice under the FTCA accrues when a reasonably diligent plaintiff would have "learned that the injury he suffered related in some way to the medical treatment he received." Valdez, 518 F.3d at 177 ("[T]he notice must be not of harm but of iatrogenic [i.e., doctor-caused] harm . . . .").  Put another way, "[a] claim will accrue when the plaintiff knows, or should know, enough 'to protect himself by seeking legal advice.'" A.Q.C., 2011 WL 3926557, at *3 (quoting Kronisch v. United States, 150 F.3d 112, 121 (2d Cir. 1998)).

Because plaintiff filed her state court complaint on July 28, 2009, the Westfall Act would operate to "save" plaintiff's claim if it accrued no earlier than July 28, 2007.  Defendant's five-page memorandum is predictably silent on the topic of accrual.  For her part, plaintiff has ignored repeated instructions, both in person (via translator) and by written order, to provide the Court with "all relevant dates upon which plaintiff is alleging malpractice and injury." (7/28/10

---

[2] Under New York law, a formerly expectant mother may not, however, recover for her own "emotional harm where the alleged medical malpractice causes in utero injury to the fetus, subsequently born alive." Sheppard-Mobley, 4 N.Y.3d at 634.

Order, at 1.) Stymied by the parties, the Court must "undertak[e] a sua sponte analysis of the threshold issue of when the cause of action accrued and the statute of limitations began to run." Valdez, 518 F.3d at 181.

The salient facts regarding timeliness are few. Plaintiff asserts that Dr. Karban "undertook and agreed to render medical care to" plaintiff "beginning on or about February 6, 2007." (Compl. 6.) On or after this date, Dr. Karban allegedly "test[ed] and damage[d]" plaintiff's placenta. During the same or a separate visit, Dr. Karban "sent [plaintiff] home, because [she] didn't have insurance coverage." (Pl. Aff. 1-2.) Plaintiff then allegedly called Dr. Karban a "few time[s]," to no avail. (Id. at 2.) Plaintiff was "rescued" by doctors at another hospital, who delivered plaintiff's baby, which allegedly survived for four months. (Id.)

On this record, it is at least conceivable that plaintiff's claims, as alleged, accrued on or after July 28, 2007, five and one-half months after she first contacted Dr. Karban. Again, whether plaintiff learned "the critical facts of her [infant]'s injury" at the time of its birth, or months later at its unfortunate passing, "any claim related to that injury accrued once [plaintiff] had reason to suspect that [the infant]'s injury was iatrogenic." A.Q.C., 2011 WL 3926557, at *4. The same is true for plaintiff's personal claim that Dr. Karban "damage[d] [her] placenta." (Pl. Aff. 1.) Given the uncertain timeline, the Court cannot conclude with any certainty that "plaintiff was [first] alerted to the appropriateness of seeking legal advice" within the two years before she filed her complaint. 2011 WL 3926557, at *5. The record demonstrates, however, that plaintiff filed her state complaint for medical malpractice "within the [two-and-a-half year] period prescribed by the New York statute of limitations."[3] Valdez, 518 F.3d at 176 (citing N.Y. C.P.L.R. § 214-a). Because her claim would have been timely under state law, plaintiff will be

---

[3] Plaintiff alleges that Dr. Karban "undertook and agreed to render medical care to" plaintiff "on or about February 6, 2007." (Compl. 6.) Two and one half years from that date is August 6, 2009. Plaintiff's complaint is dated July 28, 2009, a week ahead of the deadline.

11

allowed to exhaust her administrative remedies and re-file her complaint in federal court regardless of when her FTCA claim might have accrued.

      C.      <u>Plaintiff May Prosecute Her Timely State Complaint in Federal Court</u>

Although the Westfall Act opens a statutory route to survival for a category of claims, it does not purport to foreclose equitable avenues for others. <u>See</u> <u>Santos</u>, 559 F.3d at 189 (rejecting as a general matter the argument "that inasmuch as Congress explicitly provided a statutory exception to the FTCA's limitations period, [courts] should not recognize additional nonstatutory equitable exceptions"). This case is one of the recurring species, expressly contemplated by the Second Circuit, for which "the federal statute of limitations is shorter than the state statute," and thus for which "a plaintiff (reasonably thinking that he has a state law claim) may well bring suit within the state statute-of-limitations window, and yet be outside of the federal one." <u>Celestine</u>, 403 F.3d at 84; <u>see also</u> <u>Valdez</u>, 518 F.3d at 183 (noting the Westfall Act's creation of "a potential statute of limitations trap in states, such as New York, which – depending on the circumstances – may provide a longer period of time than the FTCA to file a complaint").

In <u>Celestine</u>, the Second Circuit noted in dicta that

> just as it seemed unfair to the <u>Kelley</u> court to apply an administrative-exhaustion requirement to a plaintiff who brought suit in state court (reasonably thinking it to be the proper venue), it is similarly unjust to treat such a timely state suit as federally barred.
>
> . . . . To the extent that federal-state disparities in statutes of limitations [bar] suits brought originally in state court by plaintiffs who were unaware that the named tortfeasor was acting as an agent of the United States, the reasoning of <u>Kelley</u> perdures, and that reasoning may well require equitable tolling in instances where there is a shorter federal statute of limitations, and the difference between these statutes of limitations is determinative of whether the suit can proceed.

403 F.3d at 84. The Circuit reprised this language in <u>Valdez</u>, leaving open the possibility that "a plaintiff's reasonable belief that he has a state law claim may be sufficient to toll the statute of

limitations on a related FTCA action without a showing of fraudulent concealment or due diligence." 518 F.3d at 185. And just recently in A.Q.C., the Circuit, while holding tolling "inapplicable to the facts of th[at] case," noted that such relief "might be available under different circumstances." 2011 WL 3926557, at *7 n.6.

For the reasons stated in Celestine, the Court finds tolling to be proper under the circumstances presented here. A timely state complaint alleging medical malpractice becomes no less timely simply because the United States has, in a surprise maneuver, removed the complaint to federal court, rebranded the plaintiff's claim and inserted itself as the defendant. As the Circuit has noted, "[t]he number of cases in which the United States has sought to take advantage of this trap," including this one, "suggests that it is aware of the consequences of its failure to disclose the material facts of federal employment by doctors who might reasonably be viewed as private practitioners." Valdez, 518 F.3d at 183. Allegedly injured plaintiffs, ignorant of the pitfalls that the FTCA will retroactively impose upon removal, should not be "trapped" by an added veneer of procedural requirements imperceptible at first blush. Cf. Santos, 559 F.3d at 203 ("[I]nasmuch as the United States partially has waived its sovereign immunity under the FTCA, it would be inequitable to allow it to avoid potential liability by reason of a limitations provision whose applicability a reasonably diligent claimant did not discover.").

The Court is mindful that "[e]quitable tolling is an extraordinary remedy because if applied too liberally it threatens to undermine the purpose of statutes of limitations of allowing potential defendants predictability and ultimate repose." Veltri v. Building Serv. 32B-J Pension Fund, 393 F.3d 318, 326 (2d Cir. 2004). Along these lines, the Circuit has rejected the "argument that Valdez requires equitable tolling whenever an FTCA plaintiff is unaware of the federal nature of the defendant." A.Q.C., 2011 WL 3926557, at *8; see also id. at *5 (cautioning

against courts' "unpredictably lengthening the limitations period" for FTCA suits). But the narrow exception here promotes predictability, and in doing so revitalizes principles that the Second Circuit has long endorsed in removed FTCA cases akin to this one. The exception's scope should be limited to cases in which a plaintiff possesses a "reasonable belief that he has a state law claim," Valdez, 518 F.3d at 185, and in which "the difference between the[] statutes of limitations is determinative of whether the suit can proceed," Celestine, 403 F.3d at 84. These principles merit brief discussion.

        1.       <u>Reasonable belief in a state law claim</u>

Not every professed belief in the validity of a state law claim will support tolling. For example, timely exhaustion is always required where the named defendant obviously is a federal entity or employee. See Valdez, 518 F.3d at 178 n.2 (noting that where "the medical care was rendered in a Veterans' Administration Hospital," for example, "once the plaintiff discover[s] that the cause of action [i]s related to the medical care . . . she [i]s aware [of] a 'government cause'"). In light of the Second Circuit's recent pronouncement in A.Q.C., it also may be required in medical malpractice actions where the plaintiff retains specialized counsel with sufficient time to discover the federal nature of the defendant and to file a timely notice of claim.

As controlling authority, A.Q.C. demands close attention. The plaintiff child in A.Q.C. was born in February 2005 "with weakness in her left arm and left leg." 2011 WL 3926557, at *1. The Circuit held that the plaintiff's FTCA claim accrued no later than February 2006, when the mother "consulted an attorney, diligently acting on information received in December 2005, when an early intervention counselor informed her that the injury [her child] sustained at birth might have been iatrogenic." Id. That counsel, a law firm specializing in representing injured children in medical malpractice cases, submitted a notice of claim to the federal government in

April 2008. Internally, the firm conceded that the claim form was untimely. See id. at *2. In February 2009, while the administrative claim was pending, the firm filed a complaint in New York Supreme Court. The case was removed, the United States substituted itself as defendant and the claim against it was dismissed for the plaintiff's failure to file a timely notice of claim.

In affirming the dismissal, the Circuit noted that the plaintiff below did "not contend that the Westfall Act applies to the facts of th[e] case, presumably because" the state action was filed more than two years after the plaintiff's FTCA claim accrued. Id. at *3. But the action was filed well after the New York limitations period had elapsed, meaning the action was "belated" under state law also.[4] Id. Thus, the plaintiff in A.Q.C. qualified for neither the legal remedy afforded by the Westfall Act nor the equitable remedy contemplated in Celestine.

To the extent that A.Q.C. dealt with the root question here – that is, would a reasonably diligent plaintiff have unearthed the notice-of-claim requirement and attendant two-year limitations period in time to preserve the federal claim? – the situations nevertheless diverge. Citing to the fact that the Public Health Service provides information via telephone and the internet regarding whether particular clinics are federally funded, the A.Q.C. panel declared that "[e]ven the most cursory investigation would have revealed the federal nature of [the plaintiff]'s claim." Id. at *8. Although handy to the already informed, these services – as the A.Q.C. panel itself suggested – are "of little use to a layperson with no knowledge of the relevant statutory scheme." Id. In the latter case, a hotline and website can hardly be likened to "a regulation that would require notice to a patient that the doctor rendering service to him is an employee of the

---

[4] Under New York law, "an infant plaintiff's medical malpractice cause of action, premised on alleged injurious acts or omissions occurring prior to birth," accrues on "the date of being born alive." LaBello, 85 N.Y.2d at 703. The plaintiff child in A.Q.C. was born in February 2005. Plaintiff's state complaint was filed in February 2009, nearly four years later. See 09 CV 0113 (NRB) (S.D.N.Y.) (dkt. #1-2).

15

United States." Valdez, 518 F.3d at 183. More broadly, a layperson presumably proceeding in earnest is not the equivalent of a law firm with actual knowledge that both its notice of claim and complaint filed on the client's behalf are untimely.

As the limited record in this case reveals, plaintiff did not retain a lawyer at all, let alone a cadre of lawyers with expertise in the field of medical malpractice and who possessed "ample time to . . . investigat[e] the case and determin[e] whether, when, where, and against whom to bring suit." A.Q.C., 2011 WL 3926557, at *3. Rather, before the state limitations period was set to expire, plaintiff approached a sole practitioner who "filed a summons and complaint to merely preserve her claim" and advised her "to seek other counsel." (Dkt. #6.)

Any delay by plaintiff is not necessarily the product of neglect. Where a claim accrues on a date certain, an injured party often will wait until just before the limitations deadline to consult with a lawyer for the purpose of filing a complaint, after which a notice of claim might already be tardy under § 2401(b). Compounding the issue in cases like these, "few, if any, plaintiffs will have sued the [deemed] federal [employee] knowing that the suit might properly have been commenced against the United States." Kelley, 568 F.2d at 265. "The instances in this sub-class of cases are characterized by innocent ignorance or ingenuous blunder. There is nothing here to be discouraged or visited with disaster." Id. at 262. Indeed, the Second Circuit and Supreme Court have independently "implied that tolling might be appropriate" where a plaintiff "has raised the precise statutory claim in issue but has mistakenly done so in the wrong forum." Smith v. Am. President Lines, Ltd., 571 F.2d 102, 109 (2d Cir. 1978). Accordingly,

absent demonstrable neglect by experienced counsel, a plaintiff's filing a timely state claim is all the diligence that the law should require to preserve a potential remedy under the FTCA.[5]

### 2. Disparity between limitations periods

In this case, the difference between the state limitations period and the FTCA's two-year window for filing a notice of claim proves crucial. The difference between periods, however, will not always be "determinative of whether the suit can proceed." Celestine, 403 F.3d at 84. That is because the FTCA's discovery-accrual rule will often be more forgiving, and lead to a later accrual date, than will the parallel state statute. Under New York law, for example, most medical malpractice claims accrue not on the date of actual or constructive discovery, but "on the date of the alleged wrongful act or omission." Udell v. Naghavi, 82 A.D.3d 960, 962 (2d Dep't 2011). This date, as recent cases such as Valdez and A.Q.C. illustrate, often precedes that on which a reasonably diligent plaintiff would suspect iatrogenic harm.

For this reason, a complaint filed against a "deemed" federal employee after the applicable state period has elapsed may nevertheless be timely by FTCA standards. See Witt v. St. Vincent's Med. Ctr., 746 A.2d 753, 756 (Conn. 2000) (affixing a three-year period of repose for medical malpractice actions from the date of treatment, "regardless of whether the plaintiff . . . could not reasonably have discovered the nature of the injuries within that time period"); Drazan v. United States, 762 F.2d 56, 59 (7th Cir. 1985) (recognizing the situation in which a limitations period "might have run" before a plaintiff "had reason to think" that "diagnosis or treatment might have played a role in his distress"). If federal law might allow

---

[5] It is exceedingly unlikely that a plaintiff, alerted to a potential federal cause of action, would consciously refrain from contacting counsel to secure an additional few months in which to file suit, rather than secure a much longer reprieve simply by filing a notice of claim at little or no cost and awaiting an administrative response.

17

such a plaintiff to exhaust her administrative remedies after the fact, then a plaintiff whose state complaint is <u>timely</u> should, out of simple fairness, be afforded the same opportunity.

Of course, statutes of limitation apply even when litigants do not know they exist. But the injustice becomes manifold when a federal limitations period bars what appears to be an otherwise viable state claim. In cases in which it applies – that is, where the difference between periods in fact is "determinative of whether the suit can proceed," <u>Celestine</u>, 403 F.3d at 84 – the exception granted herein fosters adjudication of claims on their merits, or lack thereof, with minimal collateral damage done to the interests of the federal government. Despite the laudable partial remedy provided by the Westfall Act, little since <u>Kelley</u> "authorizes the view that in this context the Congress was jealous to preserve a shabby remnant of sovereign immunity, or designed to confront litigants with a half-concealed hurdle to a judicial hearing against the real party in interest on the merits of their claims." 568 F.2d at 259.

### III. Conclusion

For the reasons given above, plaintiff's complaint is dismissed without prejudice. If plaintiff wishes to prosecute her case, within sixty (60) days of the date appearing on this Memorandum and Order, she must submit a notice of claim to the United States Department of Health and Human Services on a standard claim form provided by the agency. The notice must set forth, in greater detail than plaintiff has thus far provided, the details surrounding her alleged medical treatment by Dr. Karban, as well as her child's birth and unfortunate death, including the relevant dates or an estimate. If the United States denies the claim, plaintiff may then file a lawsuit, if she chooses, within six months after she receives notice of the final denial. The complaint must be filed in federal district court and name only the United States as a defendant. Until then, presented with an account of events that is difficult to decipher, the Court expresses

no view regarding whether plaintiff may adequately plead her claims and recover for her alleged injuries. Strict compliance with the foregoing is required.

The Clerk of Court is directed to send plaintiff a copy of this Memorandum and Order by certified mail with return receipt requested.

SO ORDERED.

Dated: Brooklyn, New York
      September 26, 2011                                      s/ Judge Raymond J. Dearie
                                                                   RAYMOND J. DEARIE
                                                                    United States District Judge